Mr. Cummings, WSOU Investments versus Google 2022 1065. Thank you, your honors. This case is very similar to the 1063 case. Similar processor structures are disclosed. This adds the memory and code structures in the claims as well. But I guess I want to back up. Are you focusing on here the at least one memory including computer program code limitation? The where the memory code and processor cause the apparatus to detect an application as being started on the apparatus and in response turn on the others which recites processor. This uses the term code. Code by definition requires something specific, doesn't it? As Diophan said, code itself connotes structure and the the function of the code is part of the code structure. But we submit that saying a processor configured to, the configured to is essentially saying here's the code that's running on the processor. They're just saying they could say a processor running this code from a technological standpoint that's really no different than saying a processor. From a more general standpoint, Phillips says that the claim term needs to be construed in the context of the entire patent such that it comports with the instrument as a whole. I don't believe that your honors are contesting that the listing of central processing unit and digital signal processors and the like that the specification identifies as structural processors. It's more the breadth of what's the software and firmware that go along with it. We don't contest. You seem to agree that there is a processing structure disclosed in the specification. To point to a section that appears to be broad but ignore the disclosure of processing structures that are disclosed in the specification would not comport with Phillips saying that it needs to be construed in the context of the patent as a whole. It says processor and here are processor structures that are disclosed. And you're also focusing on, you're talking a lot about processor, but I understood you also be, you know, it's a limitation that also has a memory and it has computer program code and your specification talks about a memory storing a computer program comprising computer program instructions. For me this feels different than the earlier cases in the sense that this feels more structural. Could you help me understand why, what your arguments are for why this is structural beyond the language that are name for memory wasn't just a black box because it existed in the prior art of the time of the invention. The specification here identifies different types of memory structures that can be used. Permanent memory or ROM, dynamic memory or DRAM, cache memory. So again it discloses different memory structures that can be used along with the processor. Do you think a person of ordinary skill in the art would know what a memory is? Absolutely. A basic first year electrical engineering student or computer science student understands the basic idea that you need to have memory modules in some format in order for a computer to run. And so the claim here is saying we're putting together this system of memory structures, code structures, and processor structures that will operate in the following manner. In ZeroClick one of the things that this court focused on was that the specification talked about commercially available computer programs being used. That would show that there was a specific structure that would be understood by a person of ordinary skill in the art. Is there anything like that in this case? I think in ZeroClick the idea was that there could be tweaked differently. Other than indications like in DiFan that there was software at the time of the invention that you could display anything at all, the patent explains what the operation of the software is. So the structure of the code is defined in part by its functions and functions are identified in the claims. I want to also address this idea that the district court applied the presumption by taking account of the rule and identifying the controlling test. That's not the same thing as applying the test as was shown in DiFan 2. Reciting the standard like an incantation is very different from actually applying it and the district court never identified where Google showed that these terms do not mean structure to a skilled artisan. That was their burden to do. They had to show that processor didn't mean structure, memory didn't mean structure, and that the code didn't mean structure to a skilled artisan and they didn't do that. Mr. Cummings, let me ask you a broad question. If we were to write a precedential opinion in this case and we wanted to advance the state of our jurisprudence beyond Williamson, Zeroclick, and DiFan, what would our holding look like? I don't think you need to go... It's a little unfair to ask you a question like that, but just while we're here, what do you think we should say that would advance the understanding of how to treat these sorts of functional statements in a software related art? I was a little surprised that VPP was and code are all tied together and they're all structural. In fact, VPP that's dealing with processor and storage said that the challenger's arguments were particularly unpersuasive in light of DiFan, which was both of the software ones, DiFan and Zeroclick. They have claims in there. Zeroclick has a processor configured to claim. DiFan has a software when executed. That's technologically the same thing as saying a court needs to go any further than VDPP, DiFan, and Zeroclick in order to reverse these cases. You don't need to go any further than that. We're not asking for some categorical rule. It almost sounds like we're heading toward a ruling that basically says that 112 doesn't apply in software cases because software related inventions, computer related inventions, the structure, aside from transistors and the like, is all defined by function. Again, I don't think that you need to go to the extent that all software is defined outside of 112.6. When the function of the software is explained, and in these cases the software is being used in conjunction with structural devices, these processor chips and memory chips, then to a skilled artisan they're going to understand, yes, this is a software structure. In fact, computer scientists refer to structures. I think Zeroclick and DiFan made significant advances in our precedent. Maybe there's nothing more that we need to say. I don't think that you would need to. VDPP made it a little bit clearer on processor and memory, but otherwise those three together we feel completely covers this. You don't need to go any further. Thank you. I'll reserve the rest of my time. Thank you. Mr. Mayergoys. Your Honor, this is the last time for me. Everyone's relief. Can we start with your views on the same question I just asked? I mean, a little philosophical. Of course, I am hoping for an affirmance. I didn't say we would write a And I think a good place to start is Williamson and DiFan. There is one section, 1126. It applies across the board. DiFan notes there's a distinction sometimes between mechanical and software. As I read the case law, the key is how. If it's a software claim, how is the function performed? It is not enough simply to recite a function. That's clear. It has to explain how is the function performed. If the claim language explains how the code would perform a function, that imbues some structural character into the claim. If the specification tells us how the code does something, that would inform the structural character of software. But simply saying software to perform a function, that is dead center 1126. The problem is that 1126 was written for mechanical inventions. I don't dispute that, Your Honor. I think it's been applied broadly. I think 1952, we did not have these issues undisputably. But I don't think the law has cabined itself strictly in terms of 1126 to mechanical or otherwise. And there's strands or silos of law as to how to treat software, how to treat mechanical. How did Dye Fan answer that question you had? In that case, the court held that it wasn't written in 1126 format. And I don't remember exactly what the word was, maybe application or program code, something like that or both. But what did it say about how, other than that a person of ordinary skill in the art would understand those words to denote the structure of computer instructions? What about that says how? I read that. I agree 100%. What animated the ultimate decision was the expert testimony. But what captures my eye in Dye Fan is... Give me your moment, Your Honor. I think I have it here. I want to say it starts at the last paragraph on page 1368. And it's the paragraph that spans 1368-1369. And I read that paragraph when it distinguishes unlike mechanical arts. I guess I read that paragraph in the context of the entire Dye Fan opinion to require a how. How is the code implementing this function? I'm reading Dye Fan where it says accordingly, because the recited functions can be performed by conventional off-the-shelf software, a person of ordinary skill would have understood the alleged code limitations to denote structure. Off-the-shelf? Right, Your Honor. I think I would submit that is consistent. How is, in that instance, again what drove that case was there was evidence that a person of ordinary skill in the art would understand the term and know how it was done because it was off-the-shelf. I don't know if it's commercially available, but it was off-the-shelf code that did that. We do not have these circumstances here. What we have is a reference, broad reference to processor, memory, and code. And in column 5, I want to say lines 31-33, it says program instructions generally refer to any logic and routines that perform methods. Can I ask you something? When you say one memory including computer program code, isn't that pretty specific? I mean, I admit there could be different code in there, but those are computer instructions and you know you've got a memory that has instructions in it. That's, you know, broad, but that's structure. Unlike a situation where, you know, we can name situations from other cases, but why isn't that structure? Because I think the relevant inquiry is still not whether it connotes some type of structure or not that it's entirely devoid of structure, but is it sufficient structure to perform the claim function? That's not what our case law says. Our case law says whether it connotes structure, and that's what our case law says, not sufficient structure to perform the function. I believe Echenera, Your Honor. I apologize. Let me pull that case. So if you look at Williamson, for example, we say the standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. And I believe in Williamson, in the same paragraph, it also provides, and later in that paragraph, I believe it says when a claim term lacks the word means the presumption can be overcome and 1126 will apply if the challenger demonstrates that the claims, that the term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function. And I believe there's three formulations that appear in that paragraph in Williamson, and I believe they appear again in another paragraph in Williamson. Echenera picks up on those second two formulations that I just read, and as do other cases such as XR. So with that, thank you for pointing that out. So with that, what is your argument for why a memory including computer program code with the processor is insufficient structure to perform the functions in the claim? Because as used in the context of the 825 patent, again, it says a processor is broadly anything that sends or receives data with generic input output interfaces, and it explains that code or program instructions is something like logic or routines that perform a method, but what's entirely absent is how do those logic or routines perform a method? That's what would be necessary to imbue some structural character to the claim terms here in the context of the 825 patent. Counsel, a little change of pace. I'd like to direct you to column seven of the 825 patent lines 53 etc. Is that an algorithm? And is that relevant here? What starts is not an algorithm for purposes of the claimed function, because the claimed function here, I believe, is detect that an application has started and turn on the radar. This does provide a sequence of statements, but if you look carefully, it really repeats the claimed function. It does not provide an algorithm for performing a function. It simply parrots the function, the recited functions in slightly different verbiage. How specific does the algorithm have to be? As this court has made clear, an algorithm can be a flowchart, it can be narrative, but it has to explain how. What an algorithm can't do under this court's precedent is it can't simply repeat the function, it can't state the output of the function or when the function occurs. There has to be some how. How is that function achieved? How is it performed? And you would say that figure six doesn't suffice? Absolutely, Your Honor. Figure six, I'm looking at it now, is six boxes with pure function. Transmit, receive, detect, change operation. There's no how. What is your best case for your view that our case law requires this element of how? And how specific, you know, the level of abstraction has to be. What do you think is your best case for saying that it has to be much more specific than what is found, for example, in column seven that Judge Lurie pointed out? I believe it's cases, I'm sorry, Your Honor, for step two? Either step two or step one. Then I would say cases like, for step two, cases like NOAA and other cases that I think we set forth in our briefs, which make clear that repeating the function or using slightly different verbiage to express the same functional language is insufficient. I think BioMedina says that NOAA, I'm blanking on the other cases, but I think they're in our briefs. As for step one, or step zero, the threshold inquiry, it would be Egenera and Williamson that make clear that simply because there's some structure is not enough. It has to be structure that can perform the specific function that is recited in the claim language. Anything for other counsel? No, Your Honor, I was looking at my notes. Unless there's any questions for me, I'll just ask once again for an affirmation. Thank you, Your Honor. Thank you. Mr. Cummings has some time left if he needs it. I want to address this how that Google complains that the claim's indefinite because it doesn't explain the how. Specifically, what they say is that it doesn't explain how the processor detects that an application has started, or it doesn't explain how the processor starts the Doppler. Those arguments can't be taken seriously. A processor doesn't know when an application is starting on the processor. That's effectively what they're saying. Skilled artisans know that when an application starts on the processor, there are things that the processor does. This is the level of detail of those skilled in the art that aren't required to be put in the specification, because otherwise the specifications just become huge. How a processor starts the Doppler radar system. Processors have been controlling devices and sub-portions of systems for years. This was 2010. The iPhone was three years before that, and the processor on that is turning the screen on, it's turning the radio on. All that we're doing here is saying the processor turns on the Doppler radar system. Google says, well, it's indefinite because you didn't explain that. Again, it's the level of detail of one skilled in the art that you don't have to include in the patent. Your view is everybody would know that the processor memory and computer instructions would be able to do that? Would know that that's sufficient structure to perform those claimed functions? Those skilled in the art, absolutely. They would understand that this is structure, and they would understand interrupts and all the things that go on for when the processor knows that an application is starting. The way that a processor is able to turn on and off devices, in particular, how does it start the Doppler radar? Unless there's any other questions, your honor, we ask that you reverse. Thank you, Mr. Cummings. Case is submitted.